980 F.2d 744
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Eraklis ERAKLIDIS d/b/a Hercules Painting Company, Appellant,
v.
H. Lawrence GARRETT, III, Secretary of the Navy, Appellee.
 No. 92-1325.
 United States Court of Appeals, Federal Circuit.
 Oct. 21, 1992.
 
 Before RICH, MAYER and RADER, Circuit Judges.
 RADER, Circuit Judge.
 
 DECISION
 
 1
 Eraklis Eraklidis d/b/a Hercules Painting Company (Hercules), appeals a decision of the Armed Services Board of Contract Appeals. The Board held that the Navy properly terminated Hercules' contract for default. Because substantial evidence supports the Board's decision, this court affirms.
 
 OPINION
 
 2
 On September 16, 1988, the Navy awarded a contract to Hercules for "Indefinite Quantity Painting." Of the sixteen orders included in the contract, only Delivery Order No. 1 is in dispute. Delivery Order No. 1, on September 23, 1988, directed Hercules to paint thirty-two residential buildings called the "Moffet Homes" by December 29, 1988. After examining the wooden surfaces of the homes, Hercules contended that the severely deteriorated state of the buildings constituted a differing site condition. Hercules therefore sought an equitable adjustment. The parties negotiated a modification to the contract. Under Modification 002, Hercules agreed to remove all chipped and peeling paint on all surfaces and to patch and caulk as necessary to produce a surface free of defects. The Navy agreed to increase the contract price and extend the completion date to March 29, 1989.
 
 
 3
 During performance, the Navy notified Hercules of inadequacies in the surface preparation. Hercules corrected some of the deficiencies and received payment for six of the buildings by the completion date. Nonetheless, six weeks thereafter, Hercules had not corrected deficiencies in fifteen of the other buildings and had performed only early surface preparation on the remaining eleven buildings. On this basis the Navy ultimately terminated the contract for default. The Board concluded that Hercules was in default and that the Navy acted properly.
 
 
 4
 This court reviews decisions of the Board under a limited standard of review. See 41 U.S.C. § 609(b) (1988).
 
 
 5
 Hercules now contends that the completion date of the contract should have been June 15, 1989, not March 19, 1989. While the parties consumed some of Hercules' performance time in negotiations, the parties negotiated and agreed upon a ninety-day extension beyond the original December 29, 1988 completion date. Hercules clearly and explicitly agreed to the completion date of March 29, 1989.
 
 
 6
 Hercules also argues that the contractual standard of work was never clear and that the parties agreed to use one of the buildings as a sample to determine the quality of surface preparation. The record does not support these contentions. First, several provisions within the contract set forth the performance standards (such as "Protection Of Areas And Surfaces," "Preparation Surfaces," "Defects in Existing Surfaces," as well as Modification 002). Second, the record did not show that Hercules received payment from an authorized Navy representative for completion of building # 401-403, which is the purported sample building. Third, any discussions or Daily Reports regarding a sample building came before the renegotiation and were not part of Modification 002. In sum, the record does not show that the Navy accepted any sample building as the standard of workmanship or that any discussions pertaining to a sample building constituted a further modification to the contract. Moreover, Hercules does not contend, and the record does not show, that any of the unpaid buildings were of equal quality to the alleged sample building standard.
 
 
 7
 The Navy did not breach the contract by refusing to make progress payments or by changing the method of payment. The record shows that the Navy agreed only to make progress payments upon completion and acceptance of individual buildings. Indeed, the payment clause of the contract conditions payments upon estimates approved by the contracting officer. The Navy had no obligation to approve estimates and tender payments when Hercules did not complete work in compliance with the contract on twenty-six of the thirty-two buildings.
 
 
 8
 Finally, inclement weather does not excuse Hercules' delay. The record does not show that the weather was unusual or severe. To the contrary, some testimony showed that the rainfall was below average.